REGINALD KENAN, Administrator of the Estate of ISIDRO MORENO, Plaintiff-Appellant v. JOE BASS, MARK BASS and ALBERT JOHNSON, Defendant-Appellees

No. COA98-420

(Filed 5 January 1999)

**Negligence— last clear chance—evidence sufficient for instruction**

The trial court erred in a negligence action by not instructing the jury on the doctrine of last clear chance where plaintiff's intestate was working in a metal trailer which was moving adjacent to and touching a cotton picker driven by defendant and plaintiff's intestate was electrocuted when the cotton picker hit a high-voltage power line. The record in the case supports a reasonable inference of each essential element of the doctrine; plaintiff's intestate placed himself in a position of peril in that he had had an opportunity to see the power line and knew that defend-

ant was operating the cotton picker toward the power line; defendant should have been aware of intestate's perilous position; defendant had the time and ability to avoid the accident in that he was, literally, in the driver's seat and intestate was engulfed by stacks of cotton once he was in the trailer and was no longer in a position to see the power line; there was abundant evidence to support an inference of negligence by defendant and the jury found defendant to have been negligent; and there was no dispute that intestate was electrocuted when defendant drove the cotton picker into the power line.

Appeal by plaintiff from judgment entered 15 October 1997 by Judge James M. Webb in Sampson County Superior Court. Heard in the Court of Appeals 19 November 1998.

*Ward and Smith, P.A., by Teresa DeLoatch Bryant and A. Charles Ellis; and Albert D. Kirby, Jr. & Assocs., by Albert D. Kirby, Jr., for plaintiff-appellant.*

*Anderson, Johnson, Lawrence, Butler & Bock, by Steven C. Lawrence and Catherine Ross Dunham, for defendant-appellees.*

McGEE, Judge.

This cases arises from a farm accident that resulted in the death of plaintiff's intestate. The record in this case tends to show that plaintiff's intestate and defendant Mark Bass were working together in October 1994 picking cotton on a farm in Duplin County. At the time of the accident, defendant was operating a cotton picker, moving it forward as it dumped cotton into a metal trailer adjacent to the cotton picker. The cotton picker and trailer were so close together they were touching. As defendant operated the cotton picker, driving it forward, plaintiff's intestate was in the trailer to "walk down" or tamp down the cotton as it was dumped into the trailer. Defendant drove the cotton picker into a high-voltage power line. When the cotton picker hit the line, plaintiff's intestate was electrocuted.

Plaintiff, representing the estate of the deceased, filed this negligence action. Allegations against defendants Joe Bass and Albert Johnson were dismissed. The case against defendant Mark Bass went to trial. A jury found that defendant Mark Bass was negligent and that plaintiff's intestate was contributorily negligent. Based on that verdict, the trial court entered judgment against plaintiff, ordering that

plaintiff have and recover nothing against defendant Mark Bass and that the action be dismissed with prejudice. Plaintiff appeals.

Plaintiff assigns error to the trial court's denial of plaintiff's request for a jury instruction on the doctrine of "last clear chance." Plaintiff argues that plaintiff met the common law requirements for a "last clear chance" instruction. We agree.

Our Supreme Court has addressed the doctrine of last clear chance on numerous occasions. In *Exum v. Boyles*, 272 N.C. 567, 158 S.E.2d 845 (1968), the Court said,

[I]t is well established in this State that where the defendant does owe the plaintiff the duty of maintaining a lookout and, had he done so, could have discovered the plaintiff's helpless peril in time to avoid injuring him by then exercising reasonable care, the doctrine of the last clear chance does impose liability if the defendant failed to take such action to avoid the injury. This is in accord with . . . the majority view in other American jurisdictions.

*Id.* at 576, 158 S.E.2d at 853 (citations omitted).

In *Vernon v. Crist*, 291 N.C. 646, 231 S.E.2d 591 (1977), our Supreme Court said,

The last clear chance or discovered peril doctrine applies "if and when it is made to appear that the defendant discovered, or by the exercise of reasonable care should have discovered, the perilous position of the party injured or killed and could have avoided the injury, but failed to do so."

In this jurisdiction last clear chance is "but an application of the doctrine of proximate cause." If defendant had the last clear chance to avoid injury to the plaintiff and failed to exercise it, then his negligence, and not the contributory negligence of the plaintiff, is the proximate cause of the injury.

*Id.* at 654-55, 231 S.E.2d at 596 (citations omitted).

In *Trantham v. Sorrells*, 121 N.C. App. 611, 468 S.E.2d 401, *disc. review denied*, 343 N.C. 311, 471 S.E.2d 82 (1996), our Court said,

The issue of last clear chance, "[m]ust be submitted to the jury if the evidence, when viewed in the light most favorable to the plaintiff, will support a reasonable inference of each essential

element of the doctrine." To obtain an instruction on the doctrine of last clear chance, the plaintiff must show the following essential elements:

1) The plaintiff, by her own negligence put herself into a position of helpless peril;

2) Defendant discovered, or should have discovered, the position of the plaintiff;

3) Defendant had the time and ability to avoid the injury;

4) Defendant negligently failed to do so; and

5) Plaintiff was injured as a result of the defendant's failure to avoid the injury.

*Id.* at 612-13, 468 S.E.2d at 402 (citations omitted).

The case law in this State is consistent with the Restatement (Second) of Torts:

§ 479. Last Clear Chance: Helpless Plaintiff

A plaintiff who has negligently subjected himself to a risk of harm from the defendant's subsequent negligence may recover for harm caused thereby if, immediately preceding the harm,

(a) the plaintiff is unable to avoid it by the exercise of reasonable vigilance and care, and

(b) the defendant is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm, when he

(i) knows of the plaintiff's situation and realizes or has reason to realize the peril involved in it or

(ii) would discover the situation and thus have reason to realize the peril, if he were to exercise the vigilance which it is then his duty to the plaintiff to exercise.

§ 480. Last Clear Chance: Inattentive Plaintiff

A plaintiff who, by the exercise of reasonable vigilance, could discover the danger created by the defendant's negligence in time to avoid the harm to him, can recover if, but only if, the defendant

    (a) knows of the plaintiff's situation, and

    (b) realizes or has reason to realize that the plaintiff is inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

    (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing opportunity to avoid the harm.

Restatement (Second) of Torts, §§ 479 and 480 (1965).

We have carefully reviewed the record in this case and find that it supports "a reasonable inference of each essential element of the doctrine" of last clear chance. *Trantham* at 613, 468 S.E.2d at 402.

We address each element:

Element one: In answering this lawsuit, defendant Mark Bass alleged that plaintiff's intestate, Isidro Moreno (Moreno), was negligent in positioning the cotton trailer in close proximity to the power line, and the evidence at trial supports an inference of that alleged negligence. The evidence tends to show the power line extended across the field within the view of Moreno. Moreno positioned the cotton trailer in close proximity to the power line. Moreno then climbed into the trailer to tamp down the cotton as it was dumped into the trailer. One could infer that by positioning the trailer near the power line and climbing into the trailer, Moreno placed himself in a position of peril, because he had had an opportunity to see the power line and he knew that defendant was operating the cotton picker such that it was moving toward the power line.

Element two: Defendant should have been aware of Moreno's perilous position. The record repeatedly shows that defendant was aware of the power line, or should have been aware of it, and was aware that Moreno was in the trailer. During the trial, plaintiff's attorney asked, "Mark, whenever you got into the cotton picker and started to drive . . . toward the back of the trailer to dump the cotton in it, nothing obstructed your view of the power line before that happened, did it?" Defendant replied, "No."

Defendant admitted he knew that Moreno was in the trailer as the cotton picker approached the power line when, in his reply to this lawsuit, defendant stated unequivocally that Moreno "was within the

KENAN v. BASS

[132 N.C. App. 30 (1999)]

metal cotton trailer for the purposes of compressing the cotton, which was being deposited by the cotton picker[.]" In his testimony during the trial, defendant said, "I remember seeing [Moreno] in the back of the trailer."

Element three: The record amply supports an inference that defendant had the time and ability to avoid the accident. Defendant was, literally, in the driver's seat. He was operating the cotton picker, and operating it in a field with which he was familiar. He testified that he had picked cotton in that particular field before, but that Moreno had not previously picked there. And defendant acknowledged during his testimony that after he had started the cotton picker, he could have seen the power line had he been paying attention. Plaintiff's attorney asked defendant, "[W]hen you started to dump [the cotton into the trailer], the wire was right in front of you . . . [w]asn't it?" Defendant responded "yes." Plaintiff's attorney then asked, "And, Mark, had you noticed it, you could have seen that wire, couldn't you?" Defendant replied, "Yes, that's correct." Defendant also testified that he had driven the cotton picker forward several feet before hitting the power line. Plaintiff's attorney asked, "So you had gone forward several feet before contact was actually made. Is that correct?" Defendant answered, "Yes, that's right." Describing his own position as the operator of the cotton picker and Moreno's position in the trailer, defendant testified:

> He's kind of at my mercy [with respect to] what's in front of him and what's above him because he can't see anything in front of him because all he's seeing is the back of the picker and the actual cotton inside the picker because it's way above his head and there's just no way to see around or above it.

The record contains numerous other references to the fact that, once he was in the trailer, Moreno was practically engulfed by stacks of cotton and was no longer in a position to see the power line. Plaintiff's attorney asked defendant, "Could [Moreno] have seen that power line?" Defendant answered, "No. There's no way he could have seen it."

Finally on this point, defendant asserted in his reply to this lawsuit that Moreno "[r]emained in the trailer when it became apparent that the cotton picker would make contact with the power lines and the metal trailer in which he had positioned himself." If it was, or should have been, apparent to Moreno that the cotton picker would make contact with the power line and that he should jump out of the

trailer, it certainly should have been apparent to defendant, who was operating the cotton picker, and he should have stopped the cotton picker.

Element four: The record provides abundant evidence to support an inference of negligence by defendant; in the trial of this case, the jury found defendant to have been negligent.

Element five: No one disputes that Moreno was electrocuted when defendant drove the cotton picker into the power line.

The evidence shows that defendant was operating the cotton picker at the time of the accident. Having undertaken the operation of that large piece of machinery, defendant had a duty of "maintaining a lookout." *Exum* at 576, 158 S.E.2d at 853. The evidence also is sufficient to support reasonable inferences of all five elements required for an instruction on last clear chance. *Trantham* at 613, 468 S.E.2d at 402. As in *Exum*,

[i]t was a question for the jury whether these were or were not the facts of the case. The issue of the last clear chance should have been submitted to the jury with proper instructions thereon. The failure of the court to do so requires that the case be sent back for a new trial.

*Exum* at 577, 158 S.E.2d at 853; *see also Trantham* at 612-13, 468 S.E.2d at 402.

New trial.

Judges JOHN and WALKER concur.